## Case No. 14,654.

### UNITED STATES v. BRODHEAD et al.

### [3 Law Rep. 95.]

District Court, D Massachusetts. Dec. Term, 1839.

OFFICERS—FRAUDULENT TRANSACTIONS OF CLERKS—EXTRA COMPENSATION—BOND—SURETIES—PAST DEFALCATIONS.

1. A navy agent being a defaulter to the government, a new bond was required. Held, that the sureties on the new bond, in this case, were responsible for past defalcations of the principal, as well as for the future.

2. Public officers are not responsible for a fraudulent transaction of their clerks, if it is not attributable to their own negligence.

[Cited in Robertson v. Sichel, 127 U. S. 517, 8 Sup. Ct. 1291.]

3. Whether public officers are entitled to extra compensation, depends on the circumstances of each particular case. There is a distinction, however, between services rendered upon a thing of permanent character, and those required upon some sudden and unforeseen emergency. In the former case they should have extra compensation, but not in the latter.

Debt on a bond signed by Daniel D. Brodhead as principal, and Stephen White, James C. Dunn, William Wyman, Charles Henshaw, Peter Harvey, F. J. Oliver, John M. Brodhead, Charles Hood, Wm. Parmenter, Charles G. Greene, Wm. Beals, David Henshaw, Isaac O. Barnes, Hall J. How, Amos Binney, George W. Lewis, Reuben A. Lamb, Samuel S. Lewis, John Henshaw, Joseph Smith, as sureties. The condition of the bond was, that Brodhead should faithfully conduct, &c. as navy agent of the port of Boston and Charlestown. The plaintiffs sought to recover the sum of seven thousand two hundred eighteen dollars and sixty-nine cents, which, it was alleged, was due from Brodhead to the United States. It appeared in evidence, that Brodhead had been navy agent for the port of Boston and Charlestown several years. He formerly had in his employ a clerk by the name of James F. Anderson, who managed to purloin, in the course of his employment, a large sum of money belonging to the United States. It was his business to fill up the checks on the bank where the money was deposited, and bring them to Brodhead to sign. After this was done, he would alter the checks, and thus draw larger sums. Thus, if a check was for $50, he could easily alter it to $500. After these fraudulent practices of Anderson were known, John A. Bates and George Bates were appointed by the government to examine Brodhead's accounts, and in their return they certified as follows: "On examining the accounts of the navy agent to ascertain the manner in which Anderson, the clerk, abstracted the sum of $7201.09, from the funds of the agent, and without his knowledge or suspicion of the fact, we have no hesitation in expressing our opinion, that such consummate art was used in altering checks and forcing balances, that the most vigilant attention on the part of Mr. Brodhead could not have prevented or sooner detected it, without additional clerical aid." After this, and before any settlement was made with the government for the amount abstracted by Anderson, a new bond was given to the government, upon which the present action was brought.

The principal grounds of defence relied on by the defendants were as follows: 1. That when this bond was given the alleged defalcation existed, and was well known to all the parties to the instrument, and the sureties were not liable for any past defalcation, but only for the future conduct of Brodhead as navy agent. 2. That the sum of $7201.09 having been fraudulently abstracted from the funds of the United States in the hands of the navy agent, by his clerk, James F. Anderson, the agent was not responsible, it not being his fault or negligence. 3. In the next place, the defendants sought to offset against the claim of the United States, the sum of two and one half per cent. commissions on the money disbursed by Mr. Brodhead for the erection of the navy hospital at Chelsea. Also, one per cent. on disbursements for other stations; and a third item of charge against the United States was for being required to endorse a large amount of treasury notes, whereby he incurred a responsibility. It was alleged by the defendants, that all these services being extraordinary, ought to be paid for as such.

Dist. Atty. Mills, for plaintiff.
Mr. Fletcher, for defendants.

DAVIS, District Judge, in his charge to the jury, said that the first position taken by the defendants could not, in his opinion, be maintained. This defalcation was known at the time the present bond was given; and the tendency of the evidence was to show, that the reason why the present bond was required, was the fact that such a defalcation existed. It could not be supposed, that the government intended to abandon this claim thus silently; and he should rule, as matter of law, that the bond did cover the defalcation existing at the time it was given.

In regard to the second ground of defence taken by the defendant, his honor instructed the jury, that if this was a mercantile case, the principal would undoubtedly be held responsible for the act of his clerk; but there was a distinction with regard to public officers. Such officers were exempted from the general rule of law, if they show that the embezzlement or misconduct was not attributable to their negligence. This was a question for the jury to settle. Did Mr. Brodhead, in this matter, conduct the business as a prudent man of business would in his own affairs? Did he exercise that degree of care and attention which the importance and responsibility of his office required? If he did, he ought not to be held responsible for the fraudulent acts of Anderson.

In regard to the third ground of defence, it was, in the first place, to be considered, whether those services were included in the ordinary duties of the navy agent. Cases might occur not within the ordinary course of the navy agent's duties, and yet requiring his services for their accomplishment, without extra compensation. If, for instance, a ship of war of the United States should arrive in the summer season, with the crew in a sickly condition, and it should be decided to place them in tents on one of the islands in Boston harbor, it would, doubtless, be reasonably required of the navy agent to make the requisite purchases for such arrangement as within the line of his duty. But in respect to a permanent thing, as the erection

of a hospital, there would seem to be a difference; and it was proper that, as this was no part of the duty of a navy agent, he should receive extra compensation. In regard to supplies of a naval character which were to go to other stations, the agent could sustain no extra charge of commissions. It could make no difference to him whether they were to go to Charlestown or to other places. But for things of a permanent character, as the dry dock at Gosport, Mr. Brodhead might be reasonably considered as entitled to extra compensation, on the same ground as for his services in the erection of the hospital at Chelsea. As to the amount which ought to be allowed, the jury should be governed by the compensation paid the agent for his other duties. His legal allowance for his appropriate duties, was one per cent. on his disbursements, not to exceed, however, two thousand dollars per annum. It would appear, also, to be a reasonable inference from the act of March 3, 1809, § 3 [2 Stat. 536], that the compensation for such extra services, performed under what may be considered a special agency, should not exceed one per cent. on the amount disbursed, the extent of compensation to certain permanent agents in that act described. The limitation to two thousand dollars per annum, was not considered as applicable to allowances of this description. As to the charge of two and one half per cent. commissions for endorsing about $300,000 of treasury notes, the court thought it ought not to be allowed. The labor was not great, and the court did not consider that Mr. Brodhead incurred any responsibility.

The jury returned the following verdict: "The jury find that there is due to the United States from said Brodhead the sum of seven thousand two hundred and one dollars and nine cents. The jury further find that there is due to said Brodhead from the United States on his claim against them, filed in the case, the sum of seven thousand five hundred and forty-six dollars and seventy-six cents. viz.: Sixteen hundred and eighty dollars and forty-nine cents commissions at 2½ per cent. on disbursements for the navy hospital at Chelsea, and five thousand eight hundred and sixty-six dollars and twenty-seven cents for commissions, at one per cent. on disbursements for other stations. The jury therefore find, that there was not due from the said Brodhead to the plaintiffs the balance of the said sum of $7,201.09, nor any part thereof, in manner and form as the plaintiffs in their replication have alleged. But the jury find a balance due from the United States to said Brodhead of $345.67."